# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**EMILIANO RAMON AVILA GUILARTE,**
**A# 208-457-685,**

    Petitioner,

vs.                                   Case No. 4:20cv401-WS-MAF

**WILLIAM P. BARR, et al.,**

    Respondents.
_____/

## REPORT AND RECOMMENDATION

Petitioner, proceeding pro se, initiated this case on August 7, 2020, by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, ECF No. 1. Petitioner was granted leave to proceed in forma pauperis, and the petition was reviewed.

Petitioner alleged that he is a native and citizen of Cuba who entered the United States in 2015. ECF No. 1 at 3. Petitioner was taken into the custody of I.C.E. on April 20, 2018, and was ordered removed on April 1, 2019. *Id.* He contends that he has cooperated fully with removal efforts and voluntarily provided identity documents but, to date, "ICE has been

unable to remove" him to any country. *Id.* After more than a year in detention, Petitioner asserts that "there is no significant likelihood of his removal in the near future" and he seeks release from detention pursuant to Zadvydas v Davis. *Id.* at 4.

Finding the petition sufficient to state a prima facie claim for relief, service was directed and Respondents were required to file an answer showing good cause why the petition should not be granted. ECF No. 4. On October 13, 2020, Respondents filed a response to the petition ECF No. 7, and three days later, a supplemental declaration in support of the response was also filed. ECF No. 8.

Respondents contend that Petitioner can be removed to Cuba, and assert that he "is wanted for a murder there, and is subject to a final order for removal from the United States." ECF No. 7 at 1. Respondents have presented evidence showing that Petitioner "was paroled into the United States at Laredo, TX on or about August 04, 2015, after presenting himself to CBP Officers and requesting asylum." ECF No. 7-1 at 2. "On December 24, 2015, Interpol issued a Red Notice or wanted person notice requesting the arrest the Petitioner for being the principal suspect of a murder case in

Cuba." *Id.* On April 26, 2018, Petitioner was arrested during an ICE ERO Fugitive Operations investigation in Houston, TX." *Id.*

Petitioner was charged "as inadmissible to the United States pursuant to Section 212(a)(7)(A)(i)(I) of Immigration and Nationality Act as an immigrant who at the time of application for admission, [was] not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card or other valid entry document." ECF No. 7-1 at 2. An Immigration Judge sustained the inadmissibility charge and Petitioner was ordered removed from the United States to Cuba on April 1, 2019. *Id.* Petitioner waived his right to appeal the removal order. *Id.*

"On May 15, 2019, ICE submitted the petitioner to the Government of Cuba for repatriation." ECF No. 7-1 at 3. On February 28, 2020, the Government of Cuba accepted Petitioner for repatriation. *Id.* at 4. Petitioner was accepted for repatriation to Cuba, and he was scheduled "for a removal flight that was to occur on March 27, 2020." *Id.* The flight, however, had to be cancelled due to the pandemic, but Petitioner was rescheduled for a March 30, 2020, flight. *Id.* Again, that flight was canceled by ICE "due to ongoing travel restrictions to Cuba, and it was

tentatively rescheduled for April 24, 2020." *Id.* Once again, that flight was canceled for the same reason. *Id.*

In August 2020, ICE was informed that flights to Cuba "would possibly resume" on September 1, 2020. *Id.* However, as of October 16, 2020, ICE still did not have a date from Cuba as to when it would "be re-opening their airport for International Flights." *Id.* at 5.

Respondents acknowledge that ICE has been unable to removed him "because multiple scheduled flights have been cancelled by Cuba because of pandemic-related flight restrictions." ECF No. 7 at 1. Nevertheless, Respondents urge the petition be denied and assert that, considering "Cuba's desire to retrieve [the Petitioner] for prosecution, there is a significant likelihood that Petitioner will be removed to Cuba in the reasonably foreseeable future." *Id.* Respondents state that "[o]nce pandemic flight restrictions abate, Petitioner's removal will be scheduled without further delay." ECF No. 7 at 7.

The supplemental declaration, filed on October 16, 2020, advised that "Petitioner has been scheduled for flights to Cuba in the last few months, but as the global health emergency situation remains unresolved, the Cuban government has cancelled flights over health and safety

concerns." ECF No. 8-1 at 2. "The Government of Cuba has extended its restrictions on all non-essential air traffic to Cuba through October 31, 2020." *Id.* The declaration advised that ICE was still in "negotiations with the Government of Cuba to allow repatriation flights into Cuba while the flight ban for non-essential flights is in effect." *Id.* The repatriation flights "would include COVID-19 precautionary measures that would address the Government of Cuba's concern for the spread of COVID-19." *Id.* at 2-3. Respondents state that the "sole obstacle impeding" Petitioner's removal are travel restrictions which were imposed to reduce the spread of COVID-19. *Id.* at 4.

After review of Respondents' filings, an Order was entered, ECF No. 9, reminding Petitioner of his opportunity to file a reply, if desired, to the response filed by Respondents. Petitioner did not do so by the deadline provided, but another Order was entered on November 9, 2020, ECF No. 10, providing both parties with an opportunity to file a status update concerning travel restrictions to Cuba.

On November 17, 2020, Petitioner filed his "reply," ECF No. 11, again asserting that he should be released on supervision. *Id.* at 2. Petitioner argues that the travel restrictions should not be accepted as "a reasonable

excuse as the dates keep changing" and Petitioner was not removed within the allotted time. ECF No. 11 at 2. Petitioner also claims that the Cuban government has "falsely alleg[ed] that the petitioner has committed a crime in Cuba or is the main suspect of a Murder," which Petitioner contends is wrong because he had already left Cuba when the crime occurred. Id. at 3. He argues that if Respondents cannot remove him "within thirty days," he should be released from detention on conditions of supervision." Id. at 6.

Respondents filed a status report on November 24, 2020. ECF No. 12. That report, supplemented by the declaration of a Detention and Deportation Office employed by Ice, Ruben Levya, reiterates that "the Government of Cuba has approved the repatriation of Petitioner to Cuba and travel authorization was given." ECF No. 12-1 at 1-2. Further, the declaration advises that "[a]s of November 15, 2020, Cuba has resumed flight operations for commercial airlines." Id. at 4. ICE is engaged in negotiations with Cuba to also resume repatriation flights. Id.

**Analysis**

Petitioner is not challenging the order of removal issued by the Immigration Judge. Rather, Petitioner seeks release from detention pursuant to Zadvydas v. Davis, 533 U.S. 678, 121 S. Ct. 2491, 150 L. Ed.

2d 653 (2001). This Court has jurisdiction over such a petition. 28 U.S.C. § 2241.

The Immigration and Naturalization Act ("INA") directs the removal of an alien from the United States after entry of a final order of removal. 8 U.S.C. § 1231(a)(1)(A). In general, the statute provide for a "90 day" removal period during which the alien must be detained. 8 U.S.C. § 1231(a)(2). Another provision authorizes further detention beyond the 90 day removal period if the "alien ordered removed" is "inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal . . . ." 8 U.S.C. § 1231(a)(6). The evidence in this case reveals Petitioner was found to be "inadmissible."

The Supreme Court held in Zadvydas v. Davis that the "indefinite detention" of a removable alien is not permissible. Zadvydas, 533 U.S. at 689, 121 S. Ct. at 2498. The Court held that continued detention of aliens beyond the mandated 90-day removal period was permissible under the statute, but only for the "period reasonably necessary to bring about that alien's removal from the United States." Id. at 689, 121 S. Ct. at 2498.

The Court concluded that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.*, at 699, 121 S. Ct. at 2503.  For the sake of uniform administration by the federal courts, the Court held that "the presumptive period during which the detention of an alien is reasonably necessary to effectuate his removal is six months; after that, the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.'" Clark v. Martinez, 543 U.S. 371, 125 S. Ct. 716, 722, 160 L. Ed. 2d 734 (2005) (quoting Zadvydas, 533 U.S. at 701, 121 S. Ct. at 2505).

In Clark v. Martinez, the Court extended its interpretation of 8 U.S.C. § 1231(a)(6) to inadmissible aliens.  The Court found no reason why the period of time reasonably necessary to effect removal would be longer for an inadmissible alien than for a resident alien.  Clark, 543 U.S. at 386, 125 S. Ct. at 727; *see also* Benitez v. Wallis, 402 F.3d 1133, 1135 (11th Cir. 2005).  Thus, the six month presumptively reasonable period of time is the same for both admitted and inadmissible aliens.  Benitez, 402 F.3d at 1135.  If an alien shows he has been held longer than the presumptively reasonable removal period and his removal is not reasonably foreseeable,

a § 2241 petition should be granted.  Clark, 543 U.S. at 386-387, 125 S. Ct. at 727; Benitez, 402 F.3d at 1135 (relying on Clark to hold that an inadmissible alien must be released and paroled into the country if he has been detained beyond the six month removal period and his removal is not reasonably foreseeable).

Zadvydas established a burden-shifting analysis for reviewing § 2241 habeas petitions.  After the presumptive six month removal period has expired, an alien must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701, 121 S. Ct. at 2505.  Thereafter, "the Government must respond with evidence sufficient to rebut that showing." *Id.*

Thus, an alien is not entitled to release based on the fact that the post-removal period has expired.  "To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701, 121 S. Ct. at 2505.  "And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* at

701, 121 S. Ct. at 2505.  "[I]f removal is not reasonably foreseeable," the writ should be granted because continued detention is "unreasonable" and "no longer authorized by statute," and the alien should be released under supervision, subject to custody again "upon a violation of those conditions." 533 U.S. at 699-700, 121 S. Ct. at 2504.[1]

    Here, the evidence demonstrates that Petitioner's removal is significantly likely to occur.  Petitioner has been accepted for repatriation and he was previously scheduled for removal flights.  The "sole" delay in removing Petitioner has been due to concerns over the transmission of COVID-19.  Neither Petitioner nor ICE has any control over a global pandemic, and the Government of Cuba cannot be faulted for seeking to limit the spread of COVID-19 by restricting international flights.  The flight restrictions do not mean, however, that Petitioner is being held in "indefinite detention."

---

[1] The relevant statute provides: "An alien ordered removed who is inadmissible under section 1182 of this title, removable [for violations of nonimmigrant status or entry conditions, violations of criminal laws, or threatening national security] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)."  8 U.S.C. § 1231(a)(6) (quoted in Benitez v. Wallis, 402 F.3d 1133, 1134 (11th Cir. 2005)).

Put simply, Petitioner is not in "indefinite detention" simply because a definite date for his removal is unknown. Petitioner can be removed from the United States when flights to Cuba can resume. Stated differently, a detainee is not entitled to release merely because a definite date of removal is unknown. The continued detention of aliens beyond the removal period is permissible so long as removal is reasonably foreseeable. In this case, it is. It is recommended that this § 2241 petition be denied.

## RECOMMENDATION

Accordingly, it is **RECOMMENDED** that the petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 by Emiliano Ramon vila Guilarte, ECF No. 1, be **DENIED.**

**IN CHAMBERS** at Tallahassee, Florida, on December 3, 2020.

                               S/   Martin A. Fitzpatrick
                               **MARTIN A. FITZPATRICK**
                               **UNITED STATES MAGISTRATE JUDGE**

## **NOTICE TO THE PARTIES**

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.